467 So.2d 920 (1985)
In the Interest of I.G.
No. 55858.
Supreme Court of Mississippi.
March 20, 1985.
Rehearing Denied May 15, 1985.
Jay L. Wiener, Jackson, for appellant.
James T. Breland, Joe B. Moss, Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and SULLIVAN and ANDERSON, JJ.
*921 SULLIVAN, Justice, for the Court:
The County Court, Youth Court Division, of Hinds County, Mississippi, adjudicated on March 16, 1984, that I.G., an 8-year-old female child, was an educationally neglected child and that her mother, W.M.M., and step-father, F.M., were to assure the child's attendance in school, with any unexcused absence resulting in their being held in contempt of court.
On March 30, 1984, the Youth Court entered an emergency order that there was probable cause to believe that I.G. was a neglected child, and that she should be placed in the custody of the Department of Public Welfare. Three days later, a petition was filed alleging that I.G. was a neglected child based on the fact that she was found locked into her home by her parents, alone and unsupervised. Three days later, on April 6, 1984, I.G.'s guardian ad litem filed a motion for citation of contempt against her parents on the ground of an unexcused absence from school on March 30, 1984.
On April 26, 1984, a hearing was held on the contempt charge, and the mother and stepfather of I.G. were held in contempt of court and fined $250 and sentenced to 30 days imprisonment. The 30-day sentence was suspended contingent upon the child's regular school attendance if, at the subsequent disposition hearing, the child was returned to their custody. On May 7, 1984, the mother and step-father filed an appeal from the order of contempt.
On May 9, 1984, the youth court held a dispositional hearing on the neglect charge and ordered that I.G. be placed in the custody of the Welfare Department for placement with Barry G., I.G.'s natural father. The court also ordered I.G.'s mother and step-father to seek counseling and parenting classes at Jackson Mental Health. The Department of Public Welfare was ordered to arrange reasonable weekly visits and to supervise the matter. The next day the court entered a modified order, suspending the contempt sanctions contingent upon any subsequent order of the court. On May 15, 1984, I.G.'s mother and step-father filed an amended notice of appeal from all three charges of neglect, educational neglect, and contempt.
On appeal, I.G.'s mother and step-father allege that the youth court erred:
1. In finding them in contempt of court;
2. In failing to inform them of their right to counsel at the first hearing; and
3. In granting custody of I.G. to Barry G.

I.

DID THE YOUTH COURT ERR IN FAILING TO INFORM I.G.'S MOTHER AND STEP-FATHER OF THEIR RIGHT TO COUNSEL AT THE EDUCATIONAL NEGLECT HEARING?
This case involves the enforcement of the Mississippi compulsory attendance law, Mississippi Code Annotated § 37-13-91 (Supp. 1984). Under subsection 7(h) of that Act, when the attendance officer has exhausted all attempts to secure attendance of the child in school, the officer shall file an educational neglect petition with the youth court under Mississippi Code Annotated § 43-21-451 (1972). The youth court shall expedite a hearing to make an appropriate adjudication and disposition to insure compliance with the school attendance law. This occurred here.
However, Mississippi Code Annotated § 43-21-451 (1972), which provides for the commencement of formal proceedings seeking an adjudication that a child is a neglected child, also contains under the same chapter the method of dealing with the adjudication process. § 43-21-557 provides:
(1) At the beginning of each adjudicatory hearing, the youth court shall:
... .
(d) explain to the parties the purpose of the hearing and the possible dispositional alternatives thereof; and
(e) explain to the parties:
(i) the right to counsel;
(ii) the right to remain silent;
(iii) the right to subpoena witnesses;

*922 (iv) the right to cross-examine witnesses testifying against him; and
(v) the right to appeal.
(2) The youth court should then ascertain whether the parties before the youth court are represented by counsel. If a party before the youth court is not represented by counsel, the youth court shall ascertain whether the party understands his right to counsel. If the party wishes to retain counsel, the youth court shall continue the hearing for a reasonable time to allow the party to obtain and consult with counsel of his choosing. If an indigent child does not have counsel, the youth court shall appoint counsel to represent the child and shall continue the hearing for a reasonable time to allow the child to consult with his appointed counsel.
Among the provisions applicable to all youth court proceedings, Mississippi Code Annotated § 43-21-201 provides:
(1) Each party shall have the right to be represented by counsel at all stages of the proceedings. If the party is a child, the child shall be represented by counsel at all critical stages. If indigent, the child shall have the right to have counsel appointed for him by the youth court.
(2) When a party first appears before the youth court, the judge shall ascertain whether he is represented by counsel and, if not, inform him of his rights, including his right to counsel.
It is undisputed that nowhere in the record before us of the educational neglect hearing does the youth court judge explain to I.G.'s mother and step-father their rights under § 43-21-557, including the right to counsel and the right to appeal.
This Court has held that where delinquency proceedings are brought under the Youth Court Act, the court should advise the minor and his parent that they are entitled to legal representation. In the interest of Long, 184 So.2d 861 (Miss. 1966); In interest of Ferguson, 317 So.2d 899 (Miss. 1975); In Interest of Way, 319 So.2d 651 (Miss. 1975). Ferguson and Way were reversed because the failure to advise the minor of his right to counsel rendered inadmissible the sole evidence against him, a confession.
These cases acknowledge that the state and the court must advise the minor and his parents of their right to counsel. Both the statute covering youth court adjudicatory hearings [§ 43-21-557] and the statute governing youth court proceedings generally [§ 43-21-201], impose a mandatory duty upon the judge to ascertain whether each party is represented by counsel and, if not, to inform him of his right to counsel. These statutes do not, however, provide for the appointment of counsel for the parents. The youth court did not inform I.G.'s mother and step-father of their right to counsel, as mandated by our legislature, and for this reason the cause must be reversed.
The effect of this omission becomes readily apparent at the contempt hearing, where I.G.'s mother and step-father testified that they came away from the educational neglect hearing with the understanding that the only valid excuse for keeping I.G. out of school was serious illness. The compulsory school attendance law, § 37-13-91 (4)(a)-(i), lists eight other valid excuses for temporary non-attendance, including a catch-all ground left to the principal's discretion. If the appellants had known of their right to counsel at the initial hearing and their right to appeal, they would likely have gone to Legal Services for representation, as they did for the second and third hearings.
The state urges that the entire issue is barred because the appellants failed to perfect an appeal from the educational neglect hearing within 30 days, as required by Mississippi Supreme Court Rule 48. The state would have its cake and eat it too. Obviously, as the appellants were not informed of their right to counsel and their right to appeal at the educational neglect hearing, they had no way of knowing that they had a right of appeal, much less the time limits within which that right had to be exercised. Furthermore, the amended *923 notice of appeal, filed 60 days after the first hearing, sought to consolidate all three hearings in one appeal. It would be manifestly unjust if this Court allowed the state to invoke Rule 48 to bar this appeal, based on the grounds that the appellants were not informed that they had a right to counsel and a right to appeal, when the statute clearly requires youth court judges to inform parties appearing before the youth court of these rights.
While this case deals with parents who were parties before the court and not the minor, the record does not reflect that the appellants were informed of any of the other rights enumerated at § 43-21-557 (1)(e), including the right to remain silent, the right to subpoena witnesses, the right to cross-examine witnesses, and the right to appeal. Our cases reversing youth court convictions for failure to inform the minor of his right to counsel generally turn on the inadmissibility of the confession. The youth court, in this case, interrogated the appellants without informing them of their right to assistance of counsel or their right to remain silent. The order upon which the subsequent citation of contempt was founded directly resulted from this interrogation. Therefore, in our view, the citation for contempt must also be reversed on the ground that it was based upon a court proceeding in which the appellants were denied statutory due process.

II.

DID THE TRIAL COURT ERR IN AWARDING CUSTODY TO BARRY G.?
Appellants raise three distinct claims under this assignment of error. First, they argue that the youth court failed to follow the statutory scheme requiring a separate adjudication and disposition hearing. Second, they allege the court applied an improper burden of proof. Last, they contend that the court erred in not finding Barry G. to be an unfit parent.
There is considerable confusion as to whether the second hearing on April 26, 1984, concerned both the general neglect charge and the contempt charge. At the outset, the state sought to consolidate the two charges, but the youth court judge indicated it would entertain the contempt charge only. At the conclusion of the hearing, the state indicated that it had presented its case as to both neglect and contempt. The state offered to put on its case as to disposition and placement, but the court postponed that until the third hearing. Thus, the hearing was nominally limited to the contempt charge but in substance dealt with the charges raised in the neglect petition.
The same statute at issue in the first assignment of error, Mississippi Code Annotated § 43-21-557 (1)(d), provides that at the beginning of each adjudicatory hearing the youth court shall explain to the parties the purpose of the hearing and the possible dispositional alternatives thereof. The youth court at the outset of the third hearing indicated that the contempt charge, not the adjudication of neglect, was to be the subject of the hearing. But, at the conclusion of the hearing, the youth court's ruling implies that it had ruled as to the merits of the general neglect charge. It requested the prompt filing of a petition to modify the placement of the child and deferred until a later date a hearing on the disposition and placement of I.G.
Mississippi Code Annotated § 43-21-601 (1972) concerns the scheduling of a disposition hearing. Subsection 1 provides that if a court finds that a child is a neglected child, it shall set a time and place for a disposition hearing "which shall be separate, distinct, and subsequent to the adjudicatory hearing." The statute goes on to provide that the disposition hearing may be held immediately following the adjudicatory hearing unless a continuance is necessary for the parties to prepare for the proceedings.
In In Interest of J.E.J., 419 So.2d 1032 (Miss. 1982), this court was confronted with a youth court's failure to follow the statutes requiring a separate dispositional hearing. The youth court in this case combined *924 the adjudicatory and disposition hearing into one continuous procedure. This Court, per Justice R.N. Lee, reversed on the ground that the statute requires a separate, distinct disposition hearing. The Court noted that this could have been accomplished by a 15-minute adjournment between the adjudication and disposition hearings. Having not followed the express requirement of the statute, this Court reversed and remanded for a disposition hearing. Id. at 1034.
In the case sub judice, it would appear that the adjudication and contempt hearings were combined, not the adjudication and disposition hearings. The disposition hearing was held about two weeks after the adjudication/contempt hearing, so the precise factual situation of Interest of J.E.J. is not present. But insofar as Interest of J.E.J. stands for a strict application of the mandates of the Youth Court Act, this Court concludes that the failure of the youth court to inform the appellants at the outset that the second hearing was on adjudication of the general neglect charges, as required by § 43-21-557(1)(d), is reversible error. Much of the same evidence was used to adjudicate the appellants in contempt and to adjudicate their child to be neglected. The appellants were entitled to know for what purpose the evidence was being offered.
There is no merit to appellants' contention that the burden of proof should be clear and convincing evidence in the proceedings sub judice. Mississippi Code Annotated § 43-21-561(3) (1972) dictates the burden of proof of preponderance of the evidence in a neglect adjudication. As noted by the state, there are a number of statutory schemes to monitor the temporary placement with the youth court returning the child to its original home if possible. See Miss. Code Ann. § 43-21-613(2)(3) (1972).
There is no merit to the final point raised by the appellants that the court erred in awarding temporary custody to Barry G. because he is an unfit father. The third hearing produced unsubstantiated allegations that Barry G. was unfit, charges which he denied.
The youth court, as trier of fact, was presented with conflicting testimony. Ordinarily this Court will not reverse a trier of fact unless it can be said with confidence that the factfinder was manifestly wrong. Here the finder of fact was confronted with nothing more than the conflicting testimony of the opposing parties and their relatives, and therefore we cannot conclude with confidence that the youth court judge was manifestly wrong as the credibility of witnesses is a matter ordinarily for the trier of fact to determine.
However, for the reasons set forth above, we conclude that the case must be reversed and remanded to the Youth Court Division of the County Court of Hinds County for further proceedings in conformity with this opinion and the statutory law. This necessitates reversal of the order of disposition and, therefore, I.G. is returned to the custody of the appellants pending further proceedings consistent with this decision.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and ANDERSON, JJ., concur.