ROBERTS, J.,
for the Court.
¶ 1. On January 26, 2005, the Jones County Youth Court found that L.C.A. qualified as a delinquent child.[1] Later that same day, the court held a disposition hearing and placed L.C.A. in the custody of the Mississippi Department of Human Services — -Youth Services for placement at a training school. Aggrieved, L.C.A. appeals and raises three issues, listed verbatim:
I.WHETHER OR NOT THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT L.C.A. COMMITTED A DELINQUENT ACT AS REQUIRED BY MISSISSIPPI CODE ANNOTATED § 43-21-561.
II. WHETHER OR NOT THE COURT ERRED IN FAILING TO ADVISE L.C.A. AND HIS MOTHER AT THE BEGINNING OF THE ADJUDICATORY HEARING OF THOSE MATTERS TO WHICH THEY WERE REQUIRED TO BE INFORMED OF PURSUANT TO MISSISSIPPI CODE ANNOTATED § 43-21-557 AND BY FAILING TO COMPLY WITH THE REQUIREMENTS OF MISSISSIPPI CODE ANNOTATED § 43-21-601.
III. WHETHER OR NOT THE COURT CONSIDERED EVIDENCE IN REACHING ITS DECISION AFTER THE ADJUDICATORY HEARING THAT HAD NOT BEEN FORMALLY INTRODUCED INTO EVIDENCE.
FACTS
¶2. On November 3, 2004, L.C.A., a student at Pinebelt Alternative School in Laurel Mississippi, became disorderly and disturbed Mr. Matthew Mauldin’s classroom. The Jones County Youth Court was contacted, and the judge issued a custody order to take L.C.A. into custody and have him placed in detention. Deputy Carroll Windham arrived to remove L.C.A. from the school and transport him to the juvenile detention center. As Deputy Windham removed L.C.A. from the school, L.C.A. became enraged and disorderly towards another teacher, Mr. Bart Gavin. L.C.A. shouted at Mr. Gavin and called Mr. Gavin a “m_f_” Additionally, L.C.A. kneed Deputy Windham in the groin area as Deputy Windham attempted to place L.C.A. in the patrol car. Once he arrived at the detention center, L.C.A. tested positive for marijuana.[2] On Decem *303 ber 15, 2004, a petition was filed in Jones County Youth Court that charged L.C.A. with disorderly conduct. On January 5, 2005, the youth court conducted an adjudicatory hearing during which L.C.A. denied the conduct. The youth court rescheduled the delinquency hearing for January 26, 2005.
¶ 3. At the scheduled delinquency hearing, Mr. Gavin, the teacher towards whom L.C.A. directed profanities, and Mr. Mack-ey Knight, the security officer at Pinebelt, each testified to L.C.A.’s conduct. They both testified that L.C.A. acted disorderly before he began to shout profanities. L.C.A. started resisting arrest, even though he was handcuffed, and he had to be physically controlled and placed into Deputy Windham’s car.
¶ 4. L.C.A. testified in his defense. L.C.A. denied that he called Mr. Gavin a “m_f_Instead, L.C.A. testified that he said, “[t]his is a m_f_ing shame” during the disturbance. L.C.A.’s mother testified in her son’s defense. L.C.A.’s mother attributed L.C.A.’s behavior on the fact that he was sick. According to L.C.A.’s mother, antibiotics influenced L.C.A.’s behavior.
¶ 5. After hearing the evidence, the youth court found that L.C.A. qualified as a delinquent child.[3] The youth court judge conducted a disposition hearing after the adjudication hearing. The youth court judge considered L.C.A.’s adjudication as a delinquent child, as well as L.C.A.’s previous adjudication as a child in need of supervision, and committed L.C.A. to the Mississippi Department of Human Services — Youth Services for placement at a training school.
STANDARD OF REVIEW
¶ 6. Our standard of review in youth court cases is limited. In Interest of D.K.L., 652 So.2d 184, 189 (Miss.1995). We consider all the evidence presented .to the youth court in the light most favorable to the State. Id. If the evidence is such that, beyond a reasonable doubt, reasonable men could not have reached the youth court’s conclusion, we must reverse. Id. However, if the evidence in the record supports the youth court’s adjudication, considering the reasonable doubt standard, then we must affirm. In Interest of I.G., 467 So.2d 920, 924 (Miss.1985).
I. WHETHER OR NOT THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT L.C.A. COMMITTED A DELINQUENT ACT AS REQUIRED BY MISSISSIPPI CODE ANNOTATED § 43-21-561.
¶ 7. In his first issue, L.C.A. makes two arguments: (a) that he was unlawfully arrested, and (b) that the evidence was insufficient to adjudicate him as a delinquent child. We first address L.C.A.’s argument for unlawful arrest.
¶ 8. L.C.A. submits that the State never explained the nature of the conduct for which Deputy Windham responded to Pinebelt to remove L.C.A. from the school and then detain him. L.C.A. notes that the December 15, 2004 petition charged him with disorderly conduct incident to his behavior as Deputy Windham removed him from the school, rather than his behavior prior to his removal. That is, L.C.A.’s adjudication as a delinquent child did not originate from his behavior in class — it originated from his behavior as he was removed from class. Nevertheless, *304 L.C.A. concludes that he was arrested unlawfully. We disagree.
¶ 9. Under certain circumstances, a law enforcement officer may rely on probable cause to place a child into custody. ' A law enforcement officer may take a child into custody when the officer has probable cause to believe custody is necessary or when the officer can find no reasonable alternative to custody. Miss.Code Ann. § 43 — 21—303(l)(a) (Rev.2004). It is necessary to take a child into custody when a child’s actions would endanger himself or others. Miss.Code Ann. § 43 — 21—301(3)(b) (Rev.2004). However, Deputy Windham did not respond based on independent probable cause. Deputy Windham responded incident to a youth court order. L.C.A. caused a disturbance in Mr. Matthew Mauldin’s classroom significant enough to warrant contacting the youth court judge. The youth court judge issued a custody order and directed that Deputy Windham take L.C.A. into custody. We therefore do not find that L.C.A. was subjected to an unlawful arrest.
¶ 10. As mentioned, L.C.A. claims that his actions were not severe enough to qualify as a delinquent child. A delinquent child is a child over ten years old who has committed a delinquent act. Miss.Code Ann. § 43-21-105® (Rev.2004). An act qualifies as a delinquent act if that act would amount to a federal or state crime if committed by an adult. Miss.Code Ann. § 43-21-105® (Rev.2004). L.C.A., then sixteen years old, was charged with violating Mississippi’s law that prohibits disorderly conduct, listed at Section 97-35-3 of the Mississippi Code. Pursuant to Section 97 — 35—3(l)(b):
Whoever with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby ... insults or makes rude or obscene remarks or gestures, or uses profane language, or physical acts, or indecent proposals to or toward another or others, or disturbs or obstructs or interferes with another or others ... shall be guilty of disorderly conduct.
According to our standard of review, we must assume that, as Deputy Windham removed L.C.A. from the school, L.C.A. struggled, acted belligerently, resisted arrest — even while wearing handcuffs, kneed Deputy Windham in the groin and called Mr. Gavin a “m_f_” Even if we assumed that L.C.A. did not intend to provoke a breach of the peace with language profane enough to cause us to refrain from repeating it, there is no doubt that, under the circumstances, a breach could result from L.C.A.’s use of profane language. Bearing our standard of review in mind, we affirm the youth court’s decision to adjudicate L.C.A. as a delinquent child.
¶ 11. The dissent reasons that “[i]t is more than a stretch to conclude that circumstances are ripe for a breach of the peace when the would-be instigator is a handcuffed sixteen-year old child being ushered in a patrol car by sheriff deputies.” L.C.A.’s age has little bearing on whether a breach of the peace could occur under the circumstances. There is no evidence that, based on his age, L.C.A. could not have intended to provoke a breach of the peace. A reasonable fact finder, such as the judge in this case, could well conclude that L.C.A.’s conduct under the circumstances could likely lead to a breach of the peace. Compounded with the evidence that L.C.A.’s language could have occasioned a breach of the peace, we find no reversible error.
¶ 12. L.C.A. argues that educators have a duty to attempt to calm situations, rather than escalate them. It would certainly be unreasonable to allow educators to provoke escalated outbursts, but that is not *305 what occurred at Pinebelt that day. There is no evidence that Mr. Gavin or any other educator at Pinebelt escalated the situation. L.C.A. seems to suggest that educators should not only expect a student to exclaim profanities towards them as that student attempts to injure a law enforcement officer, L.C.A. also suggests that educators should calmly accept that behavior. However, L.C.A. provides no support for his illogical suggestion. L.C.A.’s conduct was unacceptable regardless of his child status. We find L.C.A.’s argument entirely meritless.
II. WHETHER OR NOT THE COURT ERRED IN FAILING TO ADVISE L.C.A. AND HIS MOTHER AT THE BEGINNING OF THE ADJUDICATORY HEARING OF THOSE MATTERS TO WHICH THEY WERE REQUIRED TO BE INFORMED OF PURSUANT TO MISSISSIPPI CODE ANNOTATED § 43-21-557 AND BY FAILING TO COMPLY WITH THE REQUIREMENTS OF MISSISSIPPI CODE ANNOTATED § 43-21-601.
¶ 13. In this issue, L.C.A. claims that the youth court failed to comply with Mississippi law when it did not advise him of all of his rights at the January 26, 2005 hearing. Section 43-21-557 of the Mississippi Code requires a youth court judge to inform an alleged juvenile offender of his rights. Miss.Code Ann. § 43-21-557 (Rev. 2004). Specifically, Section 43-21-557(l)(e) provides, “At the beginning of each adjudicatory hearing, the youth court shall ... explain to the parties ... (i) the right to counsel; (ii) the right to remain silent; (iii) the right to subpoena witnesses, (iv) the right to cross-examine witnesses testifying against him; and (v) the right to appeal.”
¶ 14. The record indicates that the youth court conducted L.C.A.’s initial hearing on January 5, 2005. The record contains a copy of a summons that was served on L.C.A.’s mother. Among other things, that summons informed L.C.A.’s mother that L.C.A. had the right to be represented by counsel and the right to subpoena witnesses. The record also contains an order by which the youth court appointed counsel to represent L.C.A.
¶ 15. The dissent is of the opinion that the youth court committed reversible error because the record does not indicate that the youth court complied with Section 43-21-557 of the Mississippi Code. The dissent relies on In re J.N., 915 So.2d 1076 (Miss.Ct.App.2005). In that case, this Court found that the record contained no evidence that a youth court advised J.N.’s parents of the rights listed under Section 43-21-557(l)(d) and (e). Id. at (¶ 11). At the adjudication hearing, J.N. was represented by counsel, but J.N.’s attorney and J.N.’s parents admitted that J.N. stabbed another child in the chest. Id. In finding that reversible error resulted due to the youth court judge’s failure to comply with Section 43-21-557, this Court relied on In re I.G., 467 So.2d 920 (Miss.1985). In re J.N., 915 So.2d at (¶ 14).
¶ 16. In In re I.G., a youth court judge interrogated I.G.’s parents, unrepresented by counsel, and never informed them of their rights to counsel or to remain silent. A citation for contempt against I.G.’s parents resulted from the youth court judge’s interrogation. This Court noted that, in In re I.G., the record from the youth court hearing contained no evidence that the youth court met the procedural requirements of Section 43-21-557 in that the youth court did not inform I.G.’s parents that they had a right to counsel and the right to appeal the youth court determination. In re I.G. held that the youth court *306 has a mandatory duty to comply with Section 43-21-557 and that failure to comply necessitated reversal. Id.
¶ 17. In re J.N. discussed In re I.G. and then found that a youth court must explain the purpose of a hearing, disposi-tional alternatives, the fact that parties have a right to counsel, to remain silent, to subpoena witnesses, to cross-examine witnesses, and to appeal. In re J.N., 915 So.2d at (¶ 16) (citing Miss.Code Ann. § 43-21-557; In re T.L.C., 566 So.2d 691, 699 (Miss.1990)). Accordingly, In re I.G. and In re J.N. stand for the proposition that reversible error results where a youth court fails to comply with Section 43-21-557. However, other authority indicates that a youth court’s failure to comply with Section 43-21-557 does not necessarily result in automatic reversal.
¶ 18. The dissent’s authority for reversal, In re J.N., partially relied on In re T.L.C., 566 So.2d 691. In In re T.L.C, an appellant claimed that reversible error resulted where a youth court judge never advised him of the rights listed in Section 43-21-557. Id. In re T.L.C. discussed In re I.G.. Id. Unlike In re J.N.’s interpretation of In re I.G., the Mississippi Supreme Court held that “[wjhile conscientious practice counsels that the youth court follow the procedure concerning notification of parties’ rights, [the appellant could] point to no denial of any right that would make the hearings any less than fair.” Id. The supreme court found distinguishing facts in that the appellant in In re T.L.C. was represented by counsel and that his counsel “vigorously cross-examined the witnesses called by the youth court prosecutor.” Id. Having found such, the supreme court held that, even if the youth court judge’s failure to comply with Section 43-21-557 resulted in error, that error was harmless. Id.
¶ 19. Here, as in In re T.L.C., L.C.A. was represented by counsel. Dan Henson, one of the two youth court public defenders for the Jones County Youth Court, represented L.C.A. at both the January 5, 2005 hearing, as well as the January 26, 2005 hearing. We can presume with all justifiable confidence that an attorney appointed by the youth court judge as a public defender was familiar with the youth court law. There is no indication that L.C.A.’s trial counsel ever complained, at either hearing, of the youth court judge’s failure to explain Section 43-21-577 to his client. L.C.A’s counsel cross-examined witnesses and called witnesses on L.C.A.’s behalf in defense of the charge in the petition. L.C.A.’s appeal is presently before this Court, so L.C.A. certainly experienced no prejudice based on the youth court’s failure to specifically inform L.C.A. that he had the right to appeal. The record contains no indication that L.C.A. was denied any right that rendered the youth court hearing unfair. In fact, at no point in his brief does L.C.A. indicate just how the youth court proceedings were somehow unfair or how he was prejudiced by the youth court’s failure to comply with Section 43-21-557. As such, if any error resulted, it is harmless.
¶ 20. L.C.A. also argues that the youth court failed to comply with Mississippi Code Annotated § 43-21-601 (Rev. 2004) when it held a disposition hearing immediately after it adjudicated L.C.A. to be a delinquent child. However, Section 43-21-601 allows a youth court to conduct a disposition hearing immediately after an adjudicatory hearing unless a continuance is necessary. L.C.A. neither requested a continuance nor argued that a continuance was necessary. Accordingly, we find no merit to this issue.
*307 III. WHETHER OR NOT THE COURT CONSIDERED EVIDENCE IN REACHING ITS DECISION AFTER THE ADJUDICATORY HEARING THAT HAD NOT BEEN FORMALLY INTRODUCED INTO EVIDENCE.
¶ 21. Finally, L.C.A. argues that the youth court erred when it considered his prior adjudication as a child in need of supervision for marijuana use during the disposition hearing on January 26, 2005. However, in conducting a disposition hearing, a youth court should consider relevant factors including the nature and number of the child’s prior adjudicated offenses. Miss.Code Ann. § 43-21-603(3)(c) (Supp. 2005). The youth court clearly did not err when it considered L.C.A.’s prior adjudication as a child in need of supervision because Mississippi law encourages the youth court to consider such a factor. Consequently, this issue is without merit. However, we may only affirm in part, as we face a problem with logistics and the peculiar circumstances of this case.
¶ 22. On February 1, 2005, L.C.A. filed a motion for a supersedeas bond pending appeal. On February 14, 2005, the youth court judge granted L.C.A.’s motion. Apparently L.C.A. has been released from custody pending this appeal. L.C.A.’s date of birth is February 21,1988. L.C.A.’s eighteenth birthday was February 21, 2006. Mississippi law prohibits any court from sentencing an offender over the age of eighteen to the custody of the Division of Youth Services for placement in a state supported training school. Miss. Code Ann. § 43-21-159(5) (Rev.2004). As such, we can only affirm in part.
¶ 23. Still, there are other dispositional alternatives available to the youth court. Miss.Code Ann. § 43-21-605 (Supp.2005). Accordingly, we affirm in part and remand in part for a new dispositional hearing which excludes the possibility of placement in a state-supported training school.
¶ 24. THE JUDGMENT OF THE JONES COUNTY YOUTH COURT IS AFFIRMED AND REMANDED FOR A NEW DISPOSITIONAL HEARING WHICH EXCLUDES PLACEMENT IN A STATE-SUPPORTED TRAINING SCHOOL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., AND BARNES, J.

. Mississippi Code Annotated § 43-21-651(l)(Rev.2004) requires that on appeal only the initials of the minor shall appear. We, therefore, decline to identify the minor by name.

. The outcome of L.C.A.’s urinalysis test led to a youth court adjudication in which the youth court adjudicated L.C.A. to be a "child in need of supervision.”

. In considering whether a child is a delinquent or a child in need of supervision, the youth court may only consider evidence presented at the adjudication hearing. Miss. Code Ann. § 43-21-559 (Rev.2004).